**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT L. CASH, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 17-47 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| MICHAEL OVERMEYER, THE | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF PENNSYLVANIA, and THE DISTRICT | ) | |
| ATTORNEY OF ALLEGHENY COUNTY, | ) | |
| | ) | |
| Respondents. | ) | |

## OPINION AND ORDER

Robert "Robbie" L. Cash ("Petitioner"), has filed this pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 1, seeking to attack his state court convictions for multiple counts of, *inter alia*, involuntary deviate sexual intercourse, robbery, burglary, criminal conspiracy, terroristic threats, unlawful restraint, recklessly endangering another person, and simple assault in connection with a home invasion by Petitioner and two co-conspirators, one of whom was Petitioner's cousin, who testified against Petitioner at trial.

For the reasons that follow, the Petition will be denied because none of the grounds for relief merits federal habeas relief. Furthermore, because jurists of reason would not find this disposition of the Petition debatable, a certificate of appealability will also be denied.

## I. FACTUAL BACKGROUND

The Pennsylvania Superior Court in its September 12, 2016 Memorandum, recounted the factual history of the case as follows:

On November 16, 2004, [Appellant] called his cousin, Joshua Cash [Joshua], and asked Joshua to participate in the robbery of the home of a purported drug dealer located in McKeesport, Pennsylvania. [Appellant] told Joshua, who agreed to aid [Appellant], that there were drugs in the residence. Later that day, [Appellant] and Joshua met with William Chaffin, and at 1:00 a.m. on November 17, 2004, the three men climbed onto the roof of the house and broke into it through a second-story window. [Appellant] and Chaffin were in possession of handguns while Joshua had a sawed-off shotgun. At that time, six people were present in the house: 1) T.M., the woman who owned the home; 2) T.M.'s daughter, J.M.; 3) J.M.'s six-year-old daughter, who will be referred to as Jane Doe; 4) J.M.'s three-year-old son, who will be referred to as John Doe; 5) T.W., who was the girlfriend of T.M.'s son, whose name was Robert Warren; and 6) T.W.'s five-month-old infant daughter with Robert Warren.

After breaking in, [Appellant], Chaffin, and Joshua went downstairs to the living room, where T.M., J.M., T.W., John Doe, and T.W.'s infant daughter were located. Jane Doe was sleeping in a bedroom on the second floor and remained there during the ensuing criminal episode. [Appellant] and his accomplices pointed guns at the occupants of the living room, demanded drugs, and threatened to kill everyone present if the location of the drugs was not identified. T.M. informed the intruders that there were no drugs in the house. Chaffin became angry and pointed a gun at John Doe's head. Joshua intervened and told Chaffin to put down the weapon. At that point, J.M. and T.W. were ordered to remove their clothing, and T.M. took John Doe and the infant into the dining room. At gunpoint, J.M. and T.W. were forced to perform oral sex on [Appellant], who was wearing a gray hoodie. Both women were able to view [Appellant]'s face. After performing oral sex on [Appellant], T.W. was forced to perform oral sex on Chaffin, who also raped her. Then, [Appellant] forced J.M. to engage in sexual intercourse with him while he held a gun to her side. J.M. was able to clearly see [Appellant]'s face during this assault.

While Chaffin and [Appellant] were sexually assaulting T.W. and J.M., Joshua started to search the house for drugs and cash. While Joshua was not able to locate drugs, he confiscated a number of J.M.'s belongings, including money and jewelry, and a pit-bull puppy. At that point, Robert Warren arrived at the house, and [Appellant], Joshua, and Chaffin fled. Robert Warren wanted to pursue the three criminals, but was stopped by the women since the three men were armed. Then, J.M. and T.W. went to the hospital where they were tested. Semen from Chaffin was found on T.W. Since [Appellant] had used a condom while assaulting J.M., no seminal fluid was discovered on that victim.

Based upon this evidence, a jury acquitted [Appellant] of two counts of rape and one count of carrying an unlicensed firearm, but convicted him of two counts of involuntary deviate sexual intercourse, one count each of robbery, burglary, and conspiracy, and five counts each of terroristic threats, unlawful

restraint, reckless endangerment ("REAP"), and simple assault. The trial court ordered the preparation of a presentence report. The court sentenced [Appellant] on May 16, 2007, and corrected it the next day by a written order. The court imposed an aggregate sentence of thirty to sixty years' imprisonment followed by seventy years' probation.

Com. v. Cash, 807 WDA 2015 (Pa. Super. Sept. 12, 2016), ECF No. 11-3 at 294 – 95 (quoting

Com. v. Cash, 4 A.3d 674, 613 WDA 2008, unpublished memorandum at 1–4 (Pa. Super. June

3, 2010)).

## II. PROCEDURAL HISTORY

### A. State Court

The Pennsylvania Superior Court in its Memorandum, dated September 12, 2016,

recounted the state court procedural history as follows:

> [Appellant] appealed his original judgment of sentence at the foregoing docket number and, following direction to the trial court to file a supplemental opinion to address the issue of the court's alleged bias in sentencing, we vacated the judgment of sentence and remanded the matter with direction that re-sentencing be held before another trial judge. We also concluded that multiple lesser-included offenses should have merged with other offenses at sentencing and found the evidence insufficient to sustain one count each of Terroristic Threats and Simple Assault. Although, on re-sentencing, the substituted trial judge convened a re-sentencing hearing, he received only the argument of counsel and did not take testimony, relying instead on the existing record. In advance of the court's pronouncement of sentence, defense counsel requested imposition of concurrent prison terms but acknowledged that the circumstances could also reasonably support consecutive terms. . .

> * * *

> After receiving argument from the Commonwealth as well as an apology from [Appellant], the court imposed standard range sentences to run consecutively on two counts of IDSI (66 to 132 months each), and one count each of Robbery (66 to 132 months), Burglary (60 to 120 months), and Criminal Conspiracy (60 to 120 months). On the remaining counts, the court imposed either

consecutive terms of probation or no further penalty yielding the aggregate sentence at issue of 23½ to 53 years in prison followed by 20 years' probation. Following imposition of sentence, [Appellant's] counsel filed a "Motion for Modification of Sentence" challenging the sentence as excessive. The court denied [Appellant's] motion, following which [Appellant] filed [an] appeal.

*Commonwealth v. Cash*, 38 A.3d 933, 423 WDA 2011, (Pa. Super. Filed November 29, 2011) (unpublished memorandum at 1–5).

In his direct appeal following resentencing, this Court affirmed the judgment of sentence, stating, "[T]he sentencing scheme appears to reflect the need of the public to be protected from [Appellant's] demonstrated proclivities, while allowing him adequate time for rehabilitation should he avail himself of opportunities while confined." *Commonwealth v. Cash*, 423 WDA 2011 (unpublished memorandum at 11). Our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Cash*, 51 A.3d 837, 682 WAL 2011 (Pa. filed September 4, 2012).

Appellant filed a *pro se* PCRA petition on September 9, 2013, and appointed counsel filed an amended petition on July 16, 2014. Counsel filed a supplemental amended PCRA petition on March 5, 2015, the same day the PCRA court held an evidentiary hearing. The PCRA court dismissed Appellant's PCRA petition on April 28, 2015. Appellant filed a timely notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

<u>First Issue</u>

Appellate counsel's decision not to challenge the trial court's denial of [Appellant's] suppression motion regarding J.M.'s and T.W.'s photographic identifications of [Appellant] was objectively unreasonable. The suppression issue was of arguable merit because J.M's [sic] and T.W.'s identifications were procured via highly suggestive identification procedures and there was a substantial likelihood they misidentified [Appellant]. Appellate counsel's deficient performance prejudiced [Appellant] on appeal because it deprived this Court from reviewing it and granting relief. U.S. Const. amdts. 5, 6, 8, 14; Pa. Const. Art. I, §§ 1, 9.1 Ex.

<u>Second Issue</u>

> Trial counsel failed to identify facts relevant to the suggestiveness
> inquiry and to develop and present substantial, valid, and
> persuasive non-scientific and scientific evidence into the record
> explaining how and why these facts demonstrated that the
> identification process and procedures were unduly suggestive.
> Trial counsel also failed to identify facts relevant to the accuracy
> inquiry and develop and present substantial, valid, and persuasive
> non-scientific and scientific evidence into the record explaining
> how and why these facts affected J.M.'s and T.W.'s ability to
> accurately capture, store, and recall the grey hooded perpetrator's
> facial features. Trial counsel's failures are objectively
> unreasonable and not based on strategic or tactical reasons and
> they prejudiced Mr. Cash by allowing the jury to hear unreliable
> and unduly suggestive identification evidence. U.S. Const. amdts.
> 5, 6, 8, 14; Pa. Const. Art. I, §§ 1, 9.

Appellant's Brief at 1–2.

<u>Id</u>. at 296 – 98.

The Superior Court affirmed the denial of PCRA relief, addressing the claims raised on

the merits. <u>Id</u>. at 304 – 05.

After the Superior Court affirmed the denial of PCRA relief, Petitioner did not file a

Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.

**B. Federal Court**

Petitioner paid the filing fee and the instant Petition was filed. ECF No. 1. In the

Petition, Petitioner raised two Grounds for Relief:

> **GROUND ONE:** PETITIONER WAS DEPRIVED OF HIS SIXTH AND
> FOURTEENTH AMENDMENTS [sic] RIGHTS AS GUARANTEED BY THE
> UNITED STATES CONSTITUTION WHEN DENIED EFFECTIVE ASSISTANCE OF
> APPELLATE COUNSEL.

ECF No. 1 at 5.

> **GROUND TWO:** PETITIONER WAS DEPRIVED OF HIS SIXTH AND
> FOURTEENTH AMENDMENT RIGHTS AS GUARANTEED BY THE UNITED

STATES CONSTITUTION WHEN DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Id. at 7.

After being granted an extension of time, ECF No. 10, Respondents filed their Answer, denying that Petitioner was entitled to any federal habeas relief. ECF No. 11. Respondents attached to their Answer, as exhibits, copies of much of the state court record. Respondents also caused the original state court record to be delivered to the Clerk of this Court.

Petitioner then filed a "Memorandum of Fact & Law in Support § 2254 Petition" ("Memorandum of Law"). ECF No. 12.

All parties have consented to the exercise of plenary jurisdiction by a United States Magistrate Judge. ECF Nos. 5 and 9.

## III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court

explained that Congress intended that habeas relief for errors of law may only be granted in two

situations: 1) where the state court decision was "contrary to . . . clearly established Federal law

as determined by the Supreme Court of the United States" or 2) where that state court decision

"involved an unreasonable application of[] clearly established Federal law as determined by the

Supreme Court of the United States." <u>Id</u>. at 404-05 (emphasis deleted).  A state court decision

can be contrary to clearly established federal law in one of two ways. First, the state courts could

apply a wrong rule of law that is different from the rule of law required by the United States

Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome

that is different from a case decided by the United States Supreme Court where the facts are

indistinguishable between the state court case and the United States Supreme Court case.

In addition, we look to the United States Supreme Court holdings under the AEDPA

analysis as "[n]o principle of constitutional law grounded solely in the holdings of the various

courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas

relief." <u>Rodriguez v. Miller</u>, 537 F.3d 102, 106–07 (2d Cir. 2008) (citing <u>Carey v. Musladin</u>, 549

U.S. 70 (2006)).  The United States Court of Appeals for the Third Circuit has explained that

"Circuit precedent cannot create or refine clearly established Supreme Court law, and lower

federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is

so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court,

be accepted as correct.'"  <u>Dennis v. Sec., Pennsylvania Dept. of Corrections</u>, 834 F.3d 263, 368

(3d Cir. 2016) (en banc) (quoting <u>Marshall v. Rodgers</u>, 569 U.S. 58, 64 (2013) (per curiam)).  As

the United States Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy

for instances in which a state court unreasonably applies this Court's precedent; it does not

require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Finally, it is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. Moreno v. Ferguson, CV 17-1412, 2019 WL 4192459, at *3 (W.D. Pa. Sept. 4, 2019), *appeal filed*, 19-3777 (3d Cir. Dec. 6, 2019). This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, 2:07-CV-00021-KJD, 2010 WL 3636164, at *10 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

The United States Court of Appeals for the Third Circuit has recognized the significance of the deference under AEDPA that federal habeas courts owe to state courts' decisions on the merits of federal legal claims raised by state prisoners in federal habeas proceedings and the Third Circuit emphasized how heavy is the burden that petitioners bear in federal habeas proceedings. The Third Circuit explained that: "[w]e also defer to state courts on issues of law: We must uphold their decisions of law unless they are 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' So on federal habeas, 'even 'clear error' will not suffice.' Instead, the state court must be wrong 'beyond any possibility for fairminded disagreement.'" Orie v. Sec. Pennsylvania Dept. of Corrections, 940 F. 3d 845, 850 (3d Cir. 2019) (citations and some internal quotations omitted).

## IV. DISCUSSION

### A. Ground One – Ineffectiveness of Direct Appeal Counsel regarding Denial of Suppression Motion.

In Ground One of the Petition, Petitioner claims that his direct appeal counsel was ineffective for failing to challenge the trial court's denial of Petitioner's suppression motion regarding the identification by the victims, J.M. and T.W., of Petitioner in a photo array as one of the perpetrators of the crimes.

The Superior Court addressed this claim on the merits by adopting the PCRA trial court's disposition of this claim. Specifically, the Superior Court reasoned:

> We reject Appellant's claims that the circumstances of the victims' identifications of Appellant were highly suggestive, and we conclude that the PCRA court properly determined as much. We rely on the PCRA court's explanation, as follows:

First, [Appellant] claims that appellate counsel . . . rendered ineffective assistance of counsel because he did not appeal [the trial court's] denial of the motion to suppress J.M. and T.W.'s out–of–court photographic identifications. In the alternative, [Appellant argues] trial counsel was ineffective for failing to develop an adequate record and object to the factors that made the identification procedure unduly suggestive. According to [Appellant], the events surrounding J.M[.] and T.W.'s photo identification were "highly suggestive."

The facts of the case at bar do not indicate the presence of any "highly suggestive" behavior or conduct surrounding J.M.['s] or T.W.'s identification of [Appellant]. J.M. testified that she recognized [Appellant] when he took her into the dining room where he forced her to perform oral sex on him and then raped her, but at that time, she did not know his name. (TT, p. 69). [Appellant] argues that the victims identified him based on the "word on the street." However, J.M. stated when Detective Lopretto showed her the photo array, he did not tell her the name of the man she identified, and she only "put the name and the face together" once she viewed the photo array. (TT, pp. 69, 83, 130). T.W. also testified that she had never seen [Appellant] prior to the attack, and only heard the rumors on the street after identifying [Appellant] in the photo array. (TT, pp. 158, 177). Further, despite what [Appellant] contends, the record reflects that Detective Lorpetto [sic] only told the victims the names he was hearing in the McKeesport community after he spoke with the victims, and did not discuss the "word on the street" with them before showing them the photo arrays. (TT, pp. 340, 342).

The Pennsylvania Supreme Court has stated that the Standard of Review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from the facts are correct. ***Commonwealth v. DeJesus***, 860 A.2d 102, 112 (Pa. 2004).

These facts do not rise to the level of undue[] suggestiveness to make this claim of arguable merit. Even if the facts did lend themselves to that conclusion, the central inquiry in reviewing the propriety of identification evidence is whether, under the totality of the circumstances, the identification was reliable. ***Commonwealth v. Moye***, 836 A.2d 973, 976 (Pa. Super. 2003). The following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity

of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. *Id*.

Suggestiveness in the identification process is merely a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. ***Commonwealth v. Kubis***, 978 A.2d 391, 396 (Pa. Super. 2009). Identification evidence will not be suppressed "unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-identification." ***Commonwealth v. Burton***, 770 A.2d 771,782 (Pa. Super. 2001), appeal denied, 868 A.2d 1197 (Pa. Super. 2005), overruled on other grounds by ***Commonwealth v. Mouzon***, 812 A.2d 617,623 (Pa. 2002).

In the case at hand, J.M. had sufficient time to view the perpetrator who was not wearing a mask at the time of the crime and stated that she used a high degree of attention during the crime. (TT, 56-57, 69). J.M. stated that she "got a 'good look'" at [Appellant] when they were sitting "face to face" during the five-ten minute sexual intercourse. (TT, 68). Both J.M. and T.W. immediately identified [Appellant], and demonstrated a high level of certainty at the confrontation. When weighed against the alleged suggestive conduct, the additional factors for consideration outweigh any alleged suggestiveness surrounding J.M.['s] and T.W.'s identification of [Appellant] from the photo array. As such, trial counsel was not ineffective for failing to develop an adequate record or object to the identification process where it was quite apparent the identification was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Both J.M. and T.W. also made in court identifications of the [Appellant] as the one in the hoodie that sexually assaulted them.

Likewise, based upon the foregoing facts, [appellate counsel] had an objectively reasonable basis for not raising the issue of the suppression motion on appeal. "Arguably meritorious claims may be omitted in favor of pursing [sic] claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief." ***Commonwealth v. Pitts***, 844 A.2d 251, 254 (Pa. Super. 2005). Rather than pursue the instant claim, appellate counsel raised other matters that had a higher probability of success for his client on

appeal. [Appellate counsel] was successful on all meritorious claims he made on appeal.

There is no evidence that [Appellant] was prejudiced "sufficiently to undermine confidence in the outcome" of his case. ***Strickland v. Washington***, 466 U.S. 668, 688 (1988). The victims not only had an opportunity to identify [Appellant] from a photo array, but also made an in-court identification. As such, even if there was any merit to the claim that the photo identifications were "highly suggestive," which they were not, the motion to suppress was properly denied. The law in Pennsylvania requires a trial court to look at the totality of the circumstances when determining if an identification is reliable and whether the factual findings are supported by the record and whether the legal conclusions drawn from the facts are correct. ***Moye***, ***supra***, at p. 976 and ***DeJesus***, ***supra***, at p. 112. In the case at hand, the identifications were overwhelmingly reliable.

Finally, the trial court gave a jury instruction pertaining to how the jury should view the victims' identification[s] of [Appellant]:

> Now, [J.M. and T.W.] have identified [Appellant] as the individual—as one of the individuals—who committed these particular crimes. A victim or other witness can make a mistake in identifying an individual who committed the crime if certain factors are present. That is whether or not they were in a position to see that witness [sic], whether or not they had ample opportunity to observe them, whether or not the individuals who committed the crime were wearing masks, whether or not the individual who was the victim of that crime was under certain pressures; and threats that would cause them to have difficulty in identifying the individual who perpetrated these crimes. If you believe that one or more of these factors are present, you should view identification testimony with caution. If you believe that these factors are not present, you will accept the victim's testimony as you will accept the testimony of any other witness.

(TT, 434).

12

> For all of the reasons stated above, [Appellant's] claims are
> meritless and non-prejudicial. [The trial court] properly denied the
> suppression motion. And this [c]ourt properly denied the PCRA
> Petition.

> PCRA Court Opinion, 11/25/15, at 14–19. We rely on the PCRA court's
> disposition of this issue, adopting it as our own.

ECF No. 11-3 at 301 – 304.

### 1. The state courts' decision was not contrary to United States Supreme Court precedent.

Petitioner asserts that the state courts' decision on the above claims was an unreasonable application of United States Supreme Court precedent and was based on an unreasonable determination of the facts in light of the evidence presented in the state court. ECF No. 12 at 10. Petitioner fails to point to any specific United States Supreme Court precedent on ineffective assistance of counsel that the Superior Court unreasonably applied. Accordingly, he fails to carry his burden under AEDPA. Owsley v. Bowersox, 234 F.3d at 1057; Ross v. Atty. Gen. of State of Pennsylvania, 2008 WL 203361, at *5; West v. Foster, 2010 WL 3636164, at *10.[1]

---

[1] We note that Petitioner does point to United States Supreme Court precedent on suppression of identification evidence. ECF No. 12 at 11 – 14. Petitioner repeatedly asserts that the state courts failed to consider the totality of the circumstances, when, in the course of analyzing the deficient performance prong, the courts determined that the identification was not unconstitutionally suggestive. See, e.g., id. at 11 (Petitioner contends that the "entirety of the PCRA court's determination failed to consider the facts in their totality"); id. at 12 ("Synthesizing these decisions noted above, makes clear a 'totality of the circumstances' approach is a requirement for a 'reliability' determination and is critical for a reviewing court to employ. Failure to employ said totality approach renders said review an 'unreasonable application'/'contrary to' application of the law. Here, the state court failed to employ said 'totality of the circumstances review[.]'). In fact, the state courts explicitly cited to the correct test of totality of the circumstances, and then proceeded to apply that very test. ECF No. 11-3 at 302 ("These facts do not rise to the level of undue suggestiveness to make this claim of arguable merit. Even if the facts did lend themselves to that conclusion, the central inquiry in reviewing the propriety of identification evidence is whether, under the totality of the circumstances, the identification was reliable."); id. at 304 ("The law in Pennsylvania requires a trial court to look at the totality of the circumstances

(… footnote continued)

As noted above, the state courts addressed this claim of alleged ineffective assistance of direct appeal counsel on the merits. Accordingly, the AEDPA standard of review applies.

In addressing the claim of the alleged ineffectiveness of direct appeal counsel as raised in Ground One, both the PCRA trial court and the Superior Court, while explicitly referencing Strickland, applied the state court test for ineffective assistance of counsel ultimately derived from Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) (the "Pierce standard"). Com. v. Cash, ECF No. 11-3 at 300; 303.

The Pierce standard has been found to be materially identical to the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland in the sense of being a wrong rule of law. Id. Hence, Petitioner cannot show that the Superior Court's disposition of Ground One is contrary to United States Supreme Court precedent in the first sense of applying a wrong rule of law. Nor has Petitioner shown that the Superior Court's disposition is contrary to United States Supreme Court precedent in the second sense, i.e., he fails to point to a case on ineffective assistance of counsel decided by the United States Supreme Court where the facts are indistinguishable from his case but where the state court reached an outcome different from the outcome reached by the United States Supreme Court.

---

when determining if an identification is reliable …."). Petitioner fails to carry his burden under AEDPA to merit federal habeas relief by means of this argument. The state courts applied the correct legal test of totality of the circumstances and did so reasonably.

## 2. The state courts did not unreasonably apply <u>Strickland</u>.

Petitioner has failed to show that the PCRA trial court's and the Superior Court's decision, by adoption, was an unreasonable application of United States Supreme Court precedent on ineffective assistance of counsel.

In <u>Strickland</u>, the United States Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.

First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. at 390-91. In reviewing counsel's actions, the court presumes that counsel was effective. <u>Strickland</u>, 466 U.S. at 689. There is no one correct way to represent a client and counsel must have latitude to make tactical decisions. <u>Lewis v. Mazurkiewicz</u>, 915 F.2d 106, 115 (3d Cir. 1990) ("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained."). In light of the foregoing, the United States Court of Appeals for the Third Circuit has explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997) (<u>quoting</u> <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391.

Moreover, because the state courts addressed Petitioner's claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA as to those claims, which results in a doubly deferential standard as explained by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Premo v. Moore, 562 U.S. 115, 122 - 123 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)).  Accord Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus 'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of § 2254(d).'"), rejected on other grounds by, Dennis, 834 F.3d at 293.

In addressing Ground One, the PCRA trial court and the Superior Court found that Petitioner failed to show either deficient performance of direct appeal counsel or prejudice.

Failing to point to specific decisions of the United States Supreme Court regarding ineffectiveness and asserting instead that the state courts unreasonably applied United States

Supreme Court precedent on suppression, Petitioner fails to carry his burden to show that the state courts unreasonably determined Petitioner's direct appeal counsel was not ineffective for failing to appeal the suppression court decision.

### 3. The state courts did not unreasonably determine facts and we are limited to the state court record in this analysis.

Petitioner contends that that the state courts' disposition of his claim of direct appeal counsel's ineffectiveness resulted in a decision involving an unreasonable determination of the facts in light of the evidence presented under 28 U.S.C. § 2254(d)(2). See, e.g., ECF No. 10 at 8 ("The crux of this instant argument will focus on both, the state court's 'unreasonable application' of the law and the 'unreasonable determination of the facts in light of the evidence' presented to said court."). In doing so, Petitioner explicitly incorporates by reference his state appellate brief, ECF No. 12-4 at 1 – 15 (the "State Appellate Brief") filed in the Superior Court from the appeal of his last PCRA petition and he attaches a copy of that brief to his Memorandum of Law. ECF No. 12 at 10 ("*For purpose of brevity and clarity, petitioner will hereby incorporate his 'state appellate brief' attached hereto as Addendum 'A', as though fully incorporated with this instant argument in support of 'Ground One' and 'Ground Two'.").

To the extent that Petitioner is attempting to mount an attack under 28 U.S.C. § 2254(d)(2), on any of the state courts' findings of fact, the Court finds that Petitioner fails to carry his burden thereunder. The confluence of several legal principles both under the AEDPA and common law requires that Petitioner fails in this challenge.

We begin with first principles under AEDPA. In doing so, we recognize, as we must, that both of Petitioner's Grounds for Relief raised in the Petition were previously adjudicated on the merits by the state courts. Petitioner does not, and, indeed, on the record before this Court

cannot contend otherwise. Hence, in conducting our evaluation of the state courts' disposition of Ground One, we are limited to the record created before the state court. 28 U.S.C. § 2254(d)(2) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-- … (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."). Cullen v. Pinholster, 563 U.S. 170, 206 (2011) (Breyer, J., concurring in part and dissenting in part) ("There is no role in (d) analysis for a habeas petitioner to introduce evidence that was not first presented to the state courts."); Grant v. Lockett, 709 F.3d 224, 231 (3d Cir. 2013) ("In addition, review of a claim under § 2254(d)(2) is specifically limited to 'evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2). We have recently held that, as a general rule, 'district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d.'"), rejected on other grounds by, Dennis, 834 F.3d 263; Fears v. Bagley, 462 F. App'x 565, 568 (6th Cir. 2012) (Federal courts must rely "on only the record that was before the state court in overcoming AEDPA's deference requirements.") (citing Pinholster, 131 S.Ct. at 1400). See also Keaton v. Folino, 11-CV-07225-PD, 2018 WL 8584252, at *42 (E.D. Pa. Nov. 15, 2018) ("In Pinholster, seven justices agreed that no federal evidentiary hearing was appropriate when a district court reviewed whether the state court made a reasonable determination of the facts under section 2254(d)(2)."), report and recommendation adopted, 2019 WL 2525609 (E.D. Pa. June 19, 2019), request for certificate of appealability filed, 19-2633 (3d Cir. Aug. 29, 2019); Blue v. Thaler, 665 F.3d 647, 655–56 (5th Cir. 2011) ("To this, the Supreme Court has recently added 'that review under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits.' The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged.") (footnotes omitted).

### a. Petitioner is not entitled to an evidentiary hearing.

Because the state courts adjudicated this claim of ineffective assistance of direct appeal counsel on the merits, this Court is limited to the record before the state court and Petitioner is not only not entitled to an evidentiary hearing, as he requested in his Memorandum of Law, ECF No. 12 at 19 - 20 ("WHEREFORE, for the foregoing reasons petitioner pray [sic] this Honorable Court grant habeas corpus relief, review his claims de novo, appoint counsel to assist with this compelling/complex legal argument and grant an evidentiary hearing"), but this Court is affirmatively prohibited by AEDPA from holding an evidentiary hearing. Fears v. Bagley, 462 F. App'x at 568 ("We may rely on only the record that was before the state court in overcoming AEDPA's deference requirements."); Keaton v. Folino, 2018 WL 8584252, at *43 ("Mr. Keaton has limited his claim to a contention that the state court's fact finding was unreasonable, under section 2254(d)(2) …. In light of *Pinholster*, my review is limited to the state court record. The Petitioner's request for an evidentiary hearing must be denied.").

In addition, precisely because Petitioner challenges state court factual determinations, Petitioner must contend with 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). See also Lambert v. Blackwell, 387 F.3d 210, 234 - 36 (3d Cir. 2004) (explaining the relationship between Section 2254(d)(2) and (e)(1)).

It is strikingly clear that where the state courts have adjudicated a claim on the merits, the interplay between Sections (d)(2) (limiting review to the state court record) and (e)(1) requires that the federal habeas petitioner carry his burden to rebut by clear and convincing evidence the presumed correctness of state court factual findings by pointing to evidence solely contained in the state court record.  Pinholster, 563 U.S. at 206 (Breyer, J., concurring in part and dissenting in part) ("There is no role in (d) analysis for a habeas petitioner to introduce evidence that was not first presented to the state courts.").  See, e.g., Grant, 709 F.3d at 232 – 33 (finding that the state courts' factual finding was an unreasonable determination of the facts by pointing to evidence solely contained in the state court record).    Federal courts must rely "on only the record that was before the state court in overcoming AEDPA's deference requirements." Fears v. Bagley, 462 F. App'x at 568 (citing Pinholster, 131 S.Ct. at 1400).  Accord McCamey v. Epps, 658 F.3d 491, 498 (5th Cir. 2011) ("Because the present case, like *Pinholster*, concerns only claims under § 2254(d)(1), we must reject the district court's application of *Williams* and decline to consider the evidence developed in the federal court hearing. This court's review of McCamey's waiver therefore considers only the state-court record.").  Hence, Petitioner's request for an evidentiary hearing, is properly denied.[2]

---

[2] Moreover, Petitioner is limited to the state court record in attempting to rebut the presumptively correct factual findings of the state courts despite any diligence on Petitioner's part in trying to develop a factual record in state court.  It is crystal clear that there is no diligence exception to either Pinholster or its equivalent in Section 2254(d)(2), limiting federal habeas review to the state court record and prohibiting the federal habeas court from conducting an evidentiary hearing on any claims that were adjudicated on the merits by the state courts. Djerf v. Ryan, 931 F.3d 870, 884 (9th Cir. 2019) ("*Pinholster* clarified that this statutory exception [found in Section 2254(e)(2) which permits a federal court hearing in limited circumstances] applies only to claims reviewed de novo; evidentiary expansion is prohibited for a claim subject to AEDPA review, regardless of diligence."); Foster v. Cassady, 4:15-CV-225, 2016 WL 3511726, at *2 (E.D. Mo. Apr. 1, 2016) *objections overruled*, 4:15-CV-225, 2016 WL 3564240 (E.D. Mo. June 22, 2016);

(… footnote continued)

As the foregoing analysis makes clear, in light of AEDPA and the fact that the state courts adjudicated Petitioner's claim of ineffective assistance of counsel on the merits, Petitioner is limited to rebutting the state courts' factual findings by pointing to clear and convincing evidence in the state court record that rebuts the presumptively correct factual findings. Petitioner has simply failed to carry his burden to rebut the presumed correctness of the state court factual finding.

### b. The disputed facts according to Petitioner.

Because it is in the counseled State Appellate Brief, which Petitioner incorporates by reference into his Memorandum of Law, that the most detailed factual challenges are made, we will concentrate our analysis on the arguments raised in the State Appellate Brief. The State Appellate Brief, rather than establishing that the state courts made an unreasonable determination of the facts, itself makes misstatements of facts and fails to properly account for the date that Detective Lopretto created his Supplemental Summary Police Report that the State Appellate Brief relies upon. Furthermore, contrary to this Court's standard of review, Petitioner's arguments require this Court to make every inference in favor of Petitioner and against the Commonwealth as the verdict winner. Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); Farnsworth v. Edwards, 947 F.2d 948 (Table), 1991 WL 218007, at *2

---

Ogle v. Mohr, 2:15-CV-776, 2016 WL 1457882, at *3 (S.D. Ohio Apr. 14, 2016) ("The Supreme Court has never recognized a diligence exception to *Pinholster*…"); Lynch v. Hudson, 182 F. Supp. 3d 787, 791 (S.D. Ohio 2016) ("But *Pinholster* does not contain a due diligence exception.").

(7th Cir. 1991) ("This court must review a habeas corpus petition by construing the evidence in the light most favorable to the government.").

The facts underlying this claim are that there were names of the perpetrators being circulated about on the streets in the victims' neighborhood. Among the names were Will (i.e., William Chaffin), Robbie (i.e., Petitioner), Josh (i.e., Joshua Cash, Petitioner's cousin) and Ivan (i.e., Ivan Hale). Ivan Hale was the individual mistakenly identified by T.W. as the man who had raped her in the kitchen. However, DNA evidence conclusively established that it was Will Chaffin who had raped T.W. ECF No. 12-4 at 9. There are two main issues of fact that are central to arguments that Petitioner raises herein which were also raised in the state courts. One main issue is whether the victims, and specifically, J.M., heard these names on the street before or after November 23, 2004, the date on which the two sexual assault victims, i.e., J.M. and T.W., made their photo identifications of Petitioner and others in photo arrays. We determine that Petitioner fails to show, despite his attempts, that J.M. and T.W. heard the names on the street before the November 23, 2004 identification of him by them in the photo arrays. The other main issue is whether J.M. heard the name of "Will" on the street as she informed Detective Lopretto that she had and as he recorded in his police report that she had, contrary to Petitioner's contentions that J.M. had not heard the name of "Will" on the street.

### c. Petitioner fails to show an unreasonable determination of fact that J.M. heard Will as one of the names on the street.

First, we address the issue of whether J.M. had heard the name of "Will" on the street. Petitioner contends she did not. The record establishes the contrary. In fact, far from establishing that the states courts engaged in any unreasonable determination of facts, yet alone an erroneous determination, Petitioner made a blatant mistake of fact in the State Appellate

Brief concerning whether J.M. told Detective Lopretto that she had heard the name of "Will" on the street. Petitioner asserts that she did not and does so repeatedly and relies on the mistaken "fact" to "prove" many of his arguments. At the very least, this repeated mistaken factual assertion by Petitioner in the State Appellate Brief, undermines confidence in the arguments contained therein and renders unpersuasive Petitioner's assertion that the state courts unreasonably determined any facts.

We find that J.M., as clearly recorded by Detective Lopretto in his Supplemental Police Report, told Detective Lopretto that "SHE WAS HEARING NAMES ON THE STREET OF A WILL, ROBBIE AND IVAN." Appendix I at 2. We attach hereto as Appendix I, a copy of Detective Lopretto's Supplemental Summary Police Report, which was contained in the original state court record as Exhibit 4 to the Supplemental Amended PCRA Petition ("Detective Lopretto's Supplemental Summary Police Report" or "Appendix I"). But see ECF No. 12-2 at 2 (what apparently purports to be a copy of that same Detective Lopretto's Supplemental Summary Police Report but which differs in format and some contents from Appendix I, which was the version of Detective Lopretto's Supplemental Summary Police Report contained in the original state court record).

Petitioner recounts in the State Appellate Brief that when J.M. testified at the suppression hearing on October 19, 2005, she testified that she had heard the names on the street as "Robbie, Josh and **William**." ECF No. 12-4 at 16 (quoting suppression hearing transcript with emphasis apparently added by Petitioner). Petitioner then asserts:

> J.M.' s testimony is **false.** Detective Lopretto's November 22, 2004 report makes clear she heard the **Ivan** [sic] not Will: "[J.M.] also stated she was hearing

names on the street of a Will, Robbie, and **Ivan."**[55] Had J.M. mentioned the name Will, Detective Lopretto would have incorporated this name into his report and would have created and presented a photo array with William Chaffin's mugshot.

_____
[55] Supplemental Amended PCRA Petition, Ex. 4.

Id.  The mistake in the State Appellate Brief is so blatant that the Court is at a loss to understand how it could have been made.  The second quoted sentence in the above block-quote asserts that J.M. did not mention Will" but then the block-quote goes on to accurately quote Detective Lopretto's Supplemental Summary Police Report as recording that J.M. did tell him that "Will" was one of the names she heard.

The "Supplemental Amended PCRA Petition, Ex. 4" cited in the footnote 55 is Detective Lopretto's Supplemental Summary Police Report, as it appears at Appendix I herein, which is, in fact accurately quoted by the State Appellate Brief above, wherein Lopretto records J.M. as having mentioned that she had, in fact, heard the name of "Will" as one of the names on the street.  Merely reading the foregoing quoted sentences from the block-quote of the State Appellate Brief, and, knowing that the above quote from the State Appellate Brief of what Detective Lopretto recorded J.M. as telling him was an accurate quote of Detective Lopretto's Supplemental Summary Police Report, reveals the blatant error in the State Appellate Brief: J.M. did mention the name "Will," even as Petitioner correctly notes in the quoted portion of the Detective Lopretto's Supplemental Summary Police Report in the sentence immediately following his assertion that J.M. did not mention the name of Will.  What Petitioner describes as "Detective Lopretto's November 22, 2004" report conclusively establishes that J.M. told Detective Lopretto that the names on the street that she heard were Will, Robbie and Ivan.  Contrary to the State Appellate Brief's assertion, J.M. most certainly did mention the name Will and Detective Lopretto most certainly did incorporate the name of Will into his Report.

Petitioner repeatedly relies on this alleged "lie" by J.M. at the suppression hearing that she heard Will as one of the three names heard on the street, to bolster his arguments throughout the State Appellate Brief.  ECF No. 12-4 at 16; id. at 17 ("Detective Lopretto's report also contradicts her claim she mentioned the name **Will** on November 22nd …. Based on Detective Lopretto's November 22nd report, therefore, J.M. and T.W. had to have discussed the home invasion and the names of Josh, Robbie, and Ivan **before** November 22nd."); id. at 20 ("**Detective Lopretto is lying.**  The first time he heard the names Josh, Robbie, and Ivan was from J.M. and T.W. on **November 22nd** and J.M. and T.W. **never mentioned** the name Will."); id. at 21 (**"Second**, the first time William Chaffin's name appears in a police report is on December 1, 2004, when detective Lopretto interrogated Mr. Cash."); id.  at 22 ("2. Before J.M. and T.W. met with Detective Lopretto on November 22, 2004, they heard the names of Josh, Robbie and Ivan. . . .  6.  The first time Detective Lopretto heard of any names was on November 22, when he interviewed J.M. and T.W. and the only names they mentioned were Josh, Robbie and Ivan.").

Far from presenting clear and convincing evidence to this Court to rebut any factual finding by the state courts, the evidence that Petitioner points to in support of his contention that J.M. did not mention "Will" as one of the names she heard on the street, is the very evidence that supports the contrary proposition, that she did, in fact, hear the name of Will on the street.  This "evidence" of J.M. allegedly never having mentioned "Will" as one of the names she heard on the streets is no evidence at all.  The assertion that J.M. did not mention Will is a clearly erroneous factual assertion by Petitioner, without an iota of support in the record, and he repeatedly makes this error in the State Appellate Brief and repeatedly relies upon this mistake therein.  To the extent Petitioner relies on this "evidence" to carry his burden under AEDPA, it

rebuts nothing in the state courts' factual determinations because it fails to qualify as any "evidence" at all, yet alone the clear and convincing evidence required under AEDPA.

### d. Petitioner's argument is illogical.

At the very outset of addressing Petitioner's contention that the photo array identifications of Petitioner by J.M. and T.W. were tainted by them hearing names on the street, we note Petitioner's argument concerning the alleged suggestiveness of the photo arrays is illogical. Petitioner fails to connect how the victims merely hearing "names on the street" taints the identification of him by the victims through the photo arrays occurring on November 23, 2004. Petitioner claims that the victims heard the names on the street, including the name "Robbie" which is Petitioner's name and that this tainted their identifications of him. What he fails to establish is how merely knowing the name of "Robbie" could taint the victims' identification of him. Petitioner cannot establish that the victims' identification of Petitioner as the perpetrator by picking him out of the photo arrays was unduly suggestive unless the photo arrays listed Petitioner as "Robbie" and they did not, as no names were listed on the arrays just photos. Appendix II.[3]

Absent any names on the photo arrays, the only other way for Petitioner to establish suggestive photo arrays is to establish that the victims knew the man in the grey hoodie who sexually assaulted J.M. was, in fact, Petitioner and, also critically, that they knew Petitioner's name was Robbie. The record establishes that at least one of the victims, i.e., J.M. stated that she "knew" the guy wearing the grey hoodie, who turned out to be Petitioner, in that she saw him

---

[3] Appendix II is a copy of the photo arrays as showed to the victims, contained in the original state court record as part of Exhibit 6 attached to the Supplemental Amended PCRA Petition. Appendix II shows that there were no names associated with the photographs in the arrays.

around the neighborhood but that she did not know his name.   ECF No. 12-4 at 15 - 16 (quoting transcript of the suppression hearing).   However, Petitioner points to nothing in the record establishing that J.M. did know that Petitioner's name was Robbie or that the individual whom she knew to see in the neighborhood was "Robbie."   Therefore, absent Petitioner establishing a connection between him and the name of Robbie in the minds of J.M and T.W., Petitioner fails to establish any unconstitutional suggestiveness of the photo arrays, and, consequently, fails to establish the ineffectiveness of direct appeal counsel for failing to appeal the suppression Court's decision to admit the photo array identifications.

We hesitate to rely solely on this reason because the state courts themselves did not explicitly make this point for whatever reason.   Hence, we will address Petitioner's arguments concerning the allegedly unreasonable factual determinations made by the state courts in the course of adjudicating this claim and the evidence he points to in attempting to establish that alleged unreasonableness.

### e. Detective Lopretto's Supplemental Summary Police Report was created on November 30, 2004 and recounted facts occurring after November 22, 2004.

The second major factual dispute Petitioner presents to this Court concerns the date on which the two sexual assault victims, T.W. and J.M., told Detective Lopretto that they had heard the names on the street:  did they do so on November 22, 2004 before they identified Petitioner on November 23, 2004 as one of the perpetrators or on November 23, 2004 but only after they identified Petitioner as one of the perpetrators.  Petitioner contends that J.M. and T.W. heard the names on the street before November 22, 2004.  Petitioner fails to persuade the Court of this factual contention.

In the State Appellate Brief, Petitioner makes an unjustified factual assumption that also infects its arguments throughout. The factual assumption which the State Appellate Brief makes is that, what it repeatedly describes as Detective "Lopretto's November 22, 2004 report," was, in fact, written on November 22, 2004 and what is contained in the report can only reflect knowledge of things occurring no later than November 22, 2004. See, e.g., ECF No. 12-4 at 16 ("referring to "Detective Lopretto's November 22, 2004 report"). The assumption is wrong and demonstrably so, based on Appendix I which was contained in the original state court record, as we now explain.

Petitioner notes that J.M. testified at the suppression hearing that she had not told Detective Lopretto, at the November 22, 2004 interview of her by Lopretto, the names of the three perpetrators that she had heard on the street. Id. But Petitioner asserts that "J.M.'s testimony is **false**. Detective Lopretto's November 22nd report, which summarizes her November 22nd interview, plainly states: '[J.M.] also states she was hearing names on the street of a Will, Robbie and Ivan.'" Id. Petitioner's foregoing assertion clearly relies on the assumption that the so-called "Detective Lopretto's November 22nd 2004 report" was created on November 22, 2004 and could only recount details that had occurred up to that point and nothing after that date, and therefore, J.M. must have told Lopretto on November 22, 2004, that she was hearing names on the street. However, this is a fatal mistake of Petitioner's that undermines his entire argument of the allegedly suggestive photo arrays.

In fact, Detective Lopretto's Supplemental Summary Police Report, Appendix I, which was contained in the original state court record conclusively establishes that the so-called "Detective Loprettos's November 22nd 2004 report" was created not on November 22, 2004 but was created on November 30, 2004 and, therefore, was capable of recounting events occurring

after November 22, including events occurring at the November 23, 2004 photo array identifications and other events occurring as late as November 30, 2004. Appendix I at p. 1. The top of the page 1 of Appendix I (originally paginated at the bottom as page 10), clearly states: "SUPPLEMENTAL 11/30/2004 08:01 223 LT DENNIS LOPRETTO." We take this to mean that Detective Lopretto's Supplemental Summary Police Report was created on November 30, 2004 at 8:01 a.m. We note that the version of Detective Lopretto's Supplemental Summary Police Report, which Petitioner supplies us, does not contain this notation at the top of it. ECF No. 12-2 at 1 (originally paginated as "8"). There is no clear explanation in the record for this discrepancy in the formats and original pagination between Appendix I and ECF No. 12-2, other than perhaps that the copies of the Supplemental Summary Police Report were made at different times and hence, pages were added in the interim, which might explain the discrepancy in the original pagination numbers, which might also have affected the placement of headings.

It is important to note that for the sake of the following analysis, we will assume without deciding that the version of Detective Lopretto's Supplemental Summary Police Report which Petitioner provides to this Court as an attachment to his Memorandum of Law, ECF No. 12-2 at 1 – 3 was, in fact contained in the original state court record, and therefore, he is properly trying to rebut presumptively accurate state court facts with evidence solely contained in the state court record as he is required to do under AEDPA. If the version of Detective Lopretto's Supplemental Summary Police Report, which Petitioner provides at ECF No. 12-2 at 1 – 3, was not contained in the state court record, then this Court would not even be able to properly consider it.

In any event, Petitioner fails to account for the fact that the Supplemental Summary Police Report upon which Petitioner relies for the bulk of his argument, which he repeatedly

refers to as "Detective Lopretto's November 22, 2004 report" seemingly was not created on November 22, 2004, as Petitioner implicitly contends and as Petitioner's arguments depend upon for their validity. The so-called "Detective Lopretto's November 22, 2004 report" was not created on November 22, 2004 but merely recounts some events occurring on November 22, 2004 as well as some other events that apparently occurred after the date of November 22, 2004.

This fact that the "Detective Lopretto's November 22, 2004 report" was Detective Lopretto's November 30, 2004 Supplemental Summary Police Report, created on that date and not on November 22, 2004, as Petitioner implies, destroys Petitioner's central contention that the photo identifications of Petitioner by both of the two sexually assaulted victims were somehow unconstitutionally tainted. Petitioner's central argument seems to be that because on November 22, 2004 the victims stated to Detective Lopretto that they were already hearing names on the street previous to the photo identifications occurring on November 23, 2004, including the names of Robbie, i.e., Petitioner, and Ivan, this knowledge of the names on the streets by the victims establishes unconstitutional suggestibility in the photo arrays occurring on November 23, 2004.[4] ECF No. 12 at 12 - 13 ("there is compelling evidence which indicates that 'word on the street' tainted the identifications and rendered said identifications constitutionally unreliable. Recognition of petitioner did not have an independent basis, but in fact, resulted in 'rumors and hearsay' circulating around the 'street'. The victims here had no idea whom the assailants were,

---

[4]  As noted above, Petitioner fails to make explicit how merely hearing names on the street including "Robbie" tainted the identification of Petitioner in the photo arrays by the victims unless the victims also knew that Petitioner's name was Robbie or Ivan or one of the other names heard on the street and he fails to establish that the victims knew Petitioner's name at least prior to the photo array identifications, although he tries mightily to do so by reliance on Detective Lopretto's Supplemental Summary Police Report that Petitioner mistakenly believes was created on November 22, 2004.

but after having discussed the 'rumors and hearsay' they then identified petitioner as someone whom they had frequently seen around the neighborhood. Upon having a face to place to be the assailant's, it was then that the identifications were made."). In essence, Petitioner contends that these "names on the street" hearsay was the cause of the two victims to identify him in the photo arrays on November 23, 2004. The contention is that these two victims heard the names on the street and, of critical importance to Petitioner's argument, that they had heard these names or that they provided these names to Detective Lopretto prior to their identifications of Petitioner on November 23, 2004, when they picked Petitioner's photo out of a photo arrays. Specifically, Petitioner argues that

> Contrary to the facts, the Commonwealth in their response [Respondents Answer.: at pp. 33] mis-state the facts, and contend that the victim/witnesses only provided the detectives the "word on the street" after the photo array proceeding. However, the record is clear, the victims informed the detective [i.e., Detective Lopretto] of the "rumors" prior to viewing the photos and during a phone interview, and therefrom an "in person" interview with Lt. Dennis Lopretto. (See: Attached Exhibit "A"-police report #2004-117M6868(01)). In said report, it is made lucid, the information surrounding the "street rumors" was provided to the interviewing detective on 11-22-23 [sic]. Moreover, at (Exhibit "B"-police report #2004-117M6868(01)) page eleven (11) of the police report clearly indicates the witnesses did not view the photo array until 11/23/04, the day following the interview when having informed the detective "they" heard rumors on the street.

ECF No. 12 at 14.

Taking Petitioner's argument at face value, the Court is unpersuaded. As is made clear by the above quote, the evidentiary support that Petitioner relies upon for his assertion that the victims heard the names on the street before November 22, 2004 and/or communicated those names to Detective Lopretto on that very date, is a purported copy of Detective Lopretto's Supplemental Summary Police Report, which Petitioner provides to this Court as an attachment to the Memorandum of Law. ECF No. 12-2 at 1-3. However, we find that Detective Lopretto's

Supplemental Summary Police Report as shown in Appendix I was created not on November 22, 2004 but on November 30, 2004 and, therefore was capable of recounting events or statements that occurred up to and including November 30, 2004.

What is apparent to this Court is that Detective Lopretto recounted J.M.'s statement in his Supplemental Summary Police Report dated November 30, 2004 but that she made such statement only after the two victims had identified Petitioner on November 23, 2004, and that Detective Lopretto simply failed to record in the November 30, 2004 Supplemental Summary Police Report exactly when J.M. made this statement about the word on the street.

While Detective Lopretto failed to identify in the November 30, 2004 Supplemental Summary Police Report exactly when J.M. made this statement, i.e., on November 23, 2004, only after J.M. and T.W. identified Petitioner in the photo arrays, both Detective Lopretto and J.M. testified at trial that J.M. only made this statement of the "news on the street of three names" after J.M. had made the identifications in the photo arrays. Petitioner himself acknowledges the fact that, at his trial, J.M. testified that she only told Detective Lopretto about hearing the names on the street after she viewed the photo array. ECF No. 12-4 at 17.

Specifically, Petitioner notes that

> J.M. also said she told Detective Lopretto about hearing the names **Will, Robbie, and Ivan, after** she viewed the photo arrays and identified Mr. Cash on November 23rd[.] However, when trial counsel showed her Detective Lopretto's November 22nd report, which clearly establishes she mentioned the names Josh, Robbie, and **Ivan** on **November 22nd** she said she confused the dates because she was "not good with dates." Detective Lopretto's report also contradicts her claim she mentioned the name **Will** on November 22nd. Lastly, J.M. admitted-for **the first** time-she and T.W. began discussing the home invasion and the perpetrators in great detail **"once [they] started hearing all the names on the street."** Based on Detective Lopretto's November 22nd report, therefore, J.M. and T.W. had to have discussed the home invasion and the names of Josh, Robbie, and Ivan **before** November 22nd.

Id. (footnotes omitted).

We reject Petitioner's claims that based on Detective Lopretto's Supplemental Summary Police Report authored on November 30, 2004, that the two sexual assault victims either necessarily heard names on the street and/or provided those names to Detective Lopretto prior to November 22, 2004, and prior to the time on November 23, 2004, when they picked out Petitioner in the photo arrays as one of the perpetrators. We deem that the notation on Detective Lopretto's November 30, 2004 Supplemental Summary Police Report that J.M. said she was hearing names on the streets and J.M.'s actual statement to him that she was hearing names on the streets, both to have been made after the November 23, 2004 identification occurred as was testified to by both J.M. and Detective Lopretto and, as was, apparently believed by the State Courts which found no unconstitutional suggestibility of the photo arrays conducted on November 23, 2004.

What the foregoing analysis makes clear is that, at the very least, there is some ambiguity in the record concerning what the record evidence actually shows concerning when J.M. told Detective Lopretto that she was hearing names on the street, i.e., whether it was before November 22, 2004 or after November 22, 2004 and concerning when she informed him of such. Assuming that these factual contentions/disputes have some relevance and significance to the analysis of the suggestibility of the photo array identifications (something that Petitioner's arguments do not persuade us of), establishing that the record is, at best, ambiguous with respect to these apparently critical "facts" to Petitioner's "argument" that that state courts unreasonably determined facts, works to his detriment because he is the party with the burden of proof in these federal habeas proceedings. Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences.... His [i.e., the habeas petitioner's] entire

position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F.Supp. 1278, 1284 n. 6 (W.D.N.Y.1978) (on habeas review, the court stated that "In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, NO. CIVA.3:98-CV-2291, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000) ("whatever ambiguity exists in the record must be resolved in favor of the [state] trial court's finding.").

More importantly however, the state courts, confronted by Petitioner's arguments, nonetheless denied him relief, and apparently found credible the above cited testimony by J.M. and Detective Lopretto that she only heard and/or told Lopretto about hearing names on the street after the identification had occurred on November 23, 2004 and despite Petitioner's contentions, he fails to establish by clear and convincing evidence that such testimony by them constituted lies.

For all of the foregoing reasons, we find that Petitioner has failed to carry his heavy burden under AEDPA to rebut any of the state courts' presumptively accurate factual determinations by any accurate evidence, yet alone by clear and convincing evidence.

Accordingly, Ground One does not afford Petitioner relief because Petitioner fails to establish that the state courts' disposition of his claim that direct appeal counsel was ineffective for failing to appeal the suppression court's decision was contrary to or an unreasonable application of United States Supreme Court precedent or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**B. Ground Two – Ineffectiveness of Trial Counsel at the Suppression Hearing.**

In Ground Two, Petitioner argues that his trial counsel was ineffective at the suppression hearing for failing to "identify facts relevant to the suggestiveness inquiry and to develop and present substantial, valid, and persuasive non-scientific and scientific evidence into the record explaining how and why these facts demonstrated that the identification process and procedures were unduly suggestive." ECF No. 12-4 at 35.

The state courts addressed this issue on the merits as follows:

We also reject as meritless Appellant's reference to several purported scholarly articles, upon which he claims that the photographic array was improper because the detective presenting them showed them simultaneously rather than sequentially. Appellant's Brief at 61–66. Appellant suggests that trial counsel's "narrow focus also prevented him from researching the scientific literature regarding eyewitness identifications," and thereby failed to "develop evidence minimizing or discrediting the identification evidence." *Id*. at 64. As noted by the Commonwealth, expert testimony concerning flaws in eyewitness identifications was barred at the time of Appellant's trial. Commonwealth's Brief at 20. ***Commonwealth v. Walker***, 92 A.3d 766 (Pa. 2014), was the first time our Supreme Court held that the admission of expert testimony regarding eyewitness identification was no longer per se impermissible. We will not find appellate counsel ineffective for failing to predict a change in the law. ***See Commonwealth v. Gribble***, 863 A.2d 455, 464 (Pa. 2004) (counsel not ineffective for failing to predict changes in the law.). Thus, Appellant's second issue lacks arguable merit.

ECF No. 11-3 at 305.

Petitioner fails to show that the foregoing is either contrary to or an unreasonable application of United States Supreme Court precedent on the issue of ineffectiveness. Furthermore, to the extent that he is attempting to establish that the foregoing involved an unreasonable determination of the facts, we find that Petitioner fails to adduce any evidence, yet alone clear and convincing evidence to rebut the presumptively correct historical facts of the state court, namely that, at the time of Petitioner's trial, such evidence was inadmissible under state law. Petitioner also fails to show the state courts' rule concerning ineffectiveness that

counsel cannot be deemed ineffective for raising a meritless claim (under then prevailing law) or for failing to anticipate a change in the law is contrary to or an unreasonable application of United States Supreme Court precedent.

Indeed, Petitioner's trial counsel cannot be ineffective for failing to introduce evidence that state law clearly precluded because counsel cannot be found to be ineffective for failing to pursue a meritless claim or for failing to anticipate a change in the law. Gattis v. Snyder, 278 F.3d 222, 231 (3d Cir. 2002) ("As we have stated, 'there is no general duty on the part of defense counsel to anticipate changes in the law,' *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)"); Preston v. Superintendent Graterford SCI, 902 F.3d 365, 379 (3d Cir. 2018) ("counsel cannot be deemed ineffective for failing to raise a meritless claim") (quoting Ross v. Dist. Att'y of the Cty. of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012)), *cert. denied sub nom.*, Preston v. Ferguson, 139 S. Ct. 1613 (2019). Petitioner has not cited any United States Supreme Court precedent that is contrary to this rule of law or otherwise shown that the state courts unreasonably applied United States Supreme Court precedent on ineffective assistance of counsel.

However, Petitioner does attack the Superior Court's disposition, asserting that the Superior Court misinterpreted his claim of ineffectiveness. Petitioner asserts that the Superior Court erred because "petitioner does not nor did he claim trial counsel ineffective for failing to call an expert but instead and distinct from such a request, petitioner argues that appellate counsel had at his disposal 'empirical data,' 'treatise', companion 'case law" and widely known facts/information surrounding the fallibility of eyewitness testimony/identifications but failed to support petitioner's appeal claims with the same." ECF No. 12 at 18.

In fact, it is Petitioner's characterization of the Superior Court's disposition that is inaccurate. The Superior Court did not say that it found trial counsel effective because trial counsel was prohibited from calling a live expert witness to testify at the suppression hearing. Instead, the Superior Court accurately noted that Pennsylvania state law barred expert evidence concerning eyewitness testimony, from whatever source, whether from a live expert or a treatise or scholarly articles or some unidentified "companion caselaw" from presumably other jurisdictions (given the clarity of Pennsylvania state law regarding no expert evidence being admissible concerning eyewitness testimony). Hence, the very evidence that Petitioner asserts his trial counsel was ineffective for failing to introduce was evidence that was simply inadmissible under Pennsylvania state evidentiary law at the time of Petitioner's trial. See, e.g., Com. v. Cherry, 1095 EDA 2011, 2013 WL 11255519, at *3–4 (Pa. Super. Aug. 26, 2013)("Appellant's second position is that the trial court should have granted his pre-trial motion to take judicial notice that 'cross-racial identifications are less accurate than same-race identifications and that a witness's confidence in an identification is not highly correlated to whether that identification is accurate.' Appellant's brief at 19. Appellant asked the court to accept these principles based upon the results of scientific experiments outlined in various articles. …. In the present case, Appellant's contention fails. It has long been the law in this Commonwealth that scientific evidence as to the reliability of a witness's testimony is inadmissible as it impinges upon the role of the factfinder as the arbitrator of credibility in our judicial system..... The scientific evidence upon which Appellant herein premised his request for judicial notice was of the same ilk as that ruled inadmissible in this legal authority. The studies in question would have impeached the victim by suggesting that her identification was not credible due to data suggesting that cross-racial identifications are unreliable and that a witness can be

positive in recognizing a person as the perpetrator of a crime when that person is actually mistaken.").

Accordingly Ground Two fails to provide Petitioner relief in these federal habeas corpus proceedings.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2). The Court concludes that jurists of reason would not find it debatable whether the Petitioner made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability will be denied.

## VI. CONCLUSION

AND NOW, this 29th day of January 2020, it is hereby **ORDERED** that for the reasons set forth herein, the Petition is **DENIED**. Because we conclude that jurists of reason would not find the foregoing debatable, a certificate of appealability is likewise **DENIED**.

BY THE COURT,

MAUREEN P. KELLY
UNITED STATE MAGISTRATE JUDGE

cc:   ROBERT L. CASH
      HC-0393
      SCI Forest
      PO Box 945
      Marienville, PA 16239

      All counsel of record via CM-ECF